UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAMBRIDGE FUNDING SOURCE LLC,

                             Petitioner,

      -v-

EMCO OILFIELD SERVICES LLC, *et al.*,

                             Respondents.

22 Civ. 10741 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Petitioner Cambridge Funding Source LLC ("CFS") seeks confirmation of an arbitral award granting preliminary injunctive relief against respondents Emco Oilfield Services LLC and Emco Alpha LLC (together, "Emco"). *See* Dkt. 73 ("Pl. Supp. Mem.") at 1. The order enjoins Emco, until further arbitral order, from withdrawing disputed funds (totaling $445,052) from its bank account. *See* Dkt. 74 ("Parsons Decl."), Ex. F ("Arbitral Order") at 3. For the following reasons, the Court grants CFS's petition to confirm the arbitral award.

## I. Background

### A. Facts

#### 1. The Parties

CFS is a New York limited liability company offering a specialized form of financing, known as accounts-receivable financing.[1] Dkt. 8 ("Petition") ¶ 1. Its two members are natural persons, both domiciled in Florida. Dkt. 77 ("Parsons Supp. Decl.") ¶ 3.

---

[1] Accounts-receivable financing is a type of business financing where a company uses its accounts receivable (*i.e.*, unpaid invoices) as collateral to obtain a loan or line of credit. The company gets cash upfront based on the value of its outstanding invoices, and the lender collects payment from the company's customers as its invoices are paid. This provides working capital for the company before customers pay their bills and transfers the risk of nonpayment from the

Emco Oilfield Services LLC is a New Mexico limited liability company. Petition ¶ 2. Of its two members, one is a Delaware corporation, with its principal place of business in Arizona. Parsons Supp. Decl. ¶¶ 5, 7. The other is a natural person domiciled in New Mexico. *Id.* ¶ 8.

Emco Alpha LLC is a Texas limited liability company. Petition ¶¶ 2–3. Its two members are natural persons, both domiciled in Texas. Parsons Supp. Decl. ¶¶ 6, 9–10.

### 2. The Agreement

On March 29, 2022, CFS executed a "Standard Merchant Cash Advance Agreement" with Emco and other related entities (together, "merchants"). Parsons Decl., Exs. 1–2 ("Agreement"). Under the Agreement, CFS was to receive 10% of the merchants' future accounts receivable (*i.e.*, invoices paid) up to the aggregate sum of $674,550. *See id.* §§ 1–2. In exchange, CFS was to pay merchants a discounted purchase price of $450,000. *See id.* As a "good faith approximation of . . . [their] average . . . receivables," merchants estimated that CFS would receive $11,000 daily, such that the cash advance would be satisfied in a few months' time. *Id.* § 3.

As relevant here, the Agreement contained two clauses as to disputes between the parties. The first was a remedies clause, which provided in relevant part:

> [I]n case any Event of Default occurs and is not waived, CFS will be entitled to the issuance of an injunction, restraining order, or other equitable relief in CFS's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to CFS as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without CFS being required to furnish a bond or other undertaking in connection with the application.

---

company to the financing provider. Accounts-receivable financing essentially monetizes unpaid customer invoices to generate immediate liquidity.

*Id.* § 35. The second was an arbitration clause, which provided in relevant part:

> THE PARTIES ACKNOWLEDGE AND AGREE THAT, PROVIDED THAT NO SUIT, ACTION OR PROCEEDING (INCLUDING WITHOUT LIMITATION FILING OF AN AFFIDAVIT OF CONFESSION OF JUDGMENT) HAS BEEN ALREADY COMMENCED IN CONNECTION WITH ANY MATTER ARISING OUT OF OR RELATED TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT, EACH CFS, MERCHANT, AND ANY GUARANTOR OF SELLER SHALL HAVE THE RIGHT TO REQUEST THAT ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THE CONSTRUCTION AND INTERPRETATION OF THIS AGREEMENT, ARE SUBMITTED TO ARBITRATION. . . .

*Id.* § 48 (capitalization in original).

### 3. The Arbitration

On October 27, 2022, seven months after the Agreement was entered into, CFS initiated an arbitration against merchants with the National Arbitration Forum ("NAF") and filed for a preliminary injunction. Parsons Decl., Ex. 3 ("Statement of Claim"). CFS alleged, *inter alia*, that merchants had "misrepresented Emco's financial outlook" to defraud CFS, falsely "paint[ing] a rosy picture" of Emco's dire finances. *Id.* ¶¶ 1–5. At that point, CFS had received only $231,998 from merchants' accounts receivable, with an outstanding balance of $442,552 on the Agreement. *See id.* ¶ 49.

On November 22, 2022, Arbitrator Sherry Wetsch granted a preliminary injunction against Emco (and other respondents) up to the value of the outstanding balance. Arbitral Order at 3–4. She ordered that "all funds in any account of the Emco Respondents . . . at Bank of America or any other bank or financial institution up to the sum of $445,052 [be] hereby restrained and enjoined." *Id.* at 4.

### B. Procedural History

On December 20, 2022, CFS commenced this action, pursuant to the Federal Arbitration Act, 9 U.S.C. § 9 ("FAA"). Dkt. 1. On December 29, 2022, CFS filed an amended petition.

3

Dkt. 8. On January 5, 2023, CFS served Emco. *See* Dkts. 22–23. Emco failed to appear. On March 16, 2023, the Clerk of Court issued a Certificate of Default as to Emco. Dkt. 41.[2]

On July 25, 2023, the Court issued a scheduling order. The Court directed CFS to file and serve any additional materials with which it intended to support its petition; the Court directed Emco to respond to CFS's motion by August 22, 2023. Dkt. 72. On August 8, 2023, CFS submitted its memorandum of law in support of the petition, Dkt. 73, and supporting declaration, Dkt. 74. Emco failed to respond.

On September 12, 2023, the Court ordered CFS to confirm the basis for diversity jurisdiction in this matter, and to serve additional materials on Emco, which had until October 4, 2023 to file a response to CFS's petition. Dkt. 75. On September 19, 2023, CFS served Emco, Dkt. 76, and filed a declaration in support of jurisdiction, Dkt. 77. Emco again failed to respond and has yet to enter an appearance in this matter.

## II.   Discussion

### A.   Jurisdiction

"A federal court may entertain an action brought under the FAA only if the action has an independent jurisdictional basis." *Badgerow v. Walters*, 142 S. Ct. 1310, 1316 (2022) (cleaned up); *Rabinowitz v. Kelman*, 75 F.4th 73, 78 (2d Cir. 2023) (same). In this case, CFS asserts diversity of citizenship of the parties as the sole basis for federal jurisdiction. Petition ¶ 12.

Under 28 U.S.C. § 1332, district courts have diversity jurisdiction over actions where (1) the matter in controversy exceeds $75,000, exclusive of interest and costs, and (2) no adverse parties are citizens of the same state. *See, e.g., Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438,

---

[2] In its petition, CFS named as respondents, in addition to the Emco entities, Michael Galvis and associated entities. Petition ¶¶ 4–8. On July 24, 2023, CFS stipulated to the dismissal of Galvis and these entities, Dkt. 70, leaving the Emco entities as the sole respondents.

4

445 (2d Cir. 1995). The citizenship of a natural person is determined by his or her domicile. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). A corporation is a citizen of both the state where it is incorporated and the state where it has its "nerve center," usually its headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). And a limited liability company (or "LLC") "takes the citizenship of each of its members" for diversity purposes. *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

CFS has adequately alleged jurisdiction here. As to the first requirement, the value of the injunctive relief sought by CFS exceeds $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Here, the amount of disputed funds ($445,052) exceeds the $75,000 statutory minimum, and therefore satisfies the first prong of Section 1332.

As to the second requirement, there is complete diversity between the parties. CFS, as an LLC, takes the citizenship of its members; its two members are natural persons, domiciled in (and therefore citizens of) Florida. Parsons Supp. Decl. ¶ 3. The Emco entities are LLCs, and thus also take the citizenship of their members, which comprise several natural persons (citizens of New Mexico and Texas, respectively) and a Delaware corporation with its principal place of business in Arizona. Parsons Supp. Decl. ¶¶ 5–10. Because no respondent is a Florida citizen, and because the amount in controversy exceeds $75,000, the Court has jurisdiction over CFS's petition.

### B. Applicable Legal Standards to the Enforcement of Arbitration Awards

"Arbitration awards are not self-enforcing." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (cleaned up). Instead, "they must be given force and effect by being

5

converted to judicial orders by courts." *Id.* The FAA provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'" *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citations and internal quotation marks omitted). "The showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").

A motion to confirm an arbitral award against a party that has failed to appear in the action is evaluated under the legal standards applicable to a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109–10. To prevail on such a motion, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed motion for confirmation of an arbitral award, a court:

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

### C. Confirmation of the Arbitral Award

On the basis of the award, and on the very limited review that is appropriate, the Court finds summary judgment warranted, as CFS has shown there is no material issue of fact in dispute.[3] Arbitrator Wetsch acted within the scope of the authority granted her by the parties,

---

[3] That the award is a preliminary injunction (rather than a permanent injunction or final award for a sum certain) is of no matter. Although the FAA "has no application to an interim award that the arbitrators did not intend to be their final determination on the issues submitted to them," *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980), "courts in this Circuit have firmly established the principle that arbitrators . . . have the authority to order interim relief in order to prevent their final award from becoming meaningless," *Brit. Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 516 (S.D.N.Y. 2000) (citing cases). *See, e.g., Nat'l*

7

and found CFS "satisfied its burden with respect to issuance of a preliminary injunction," upon consideration of evidence submitted by both parties at the arbitration hearing. Award at 3. From this, the Court concludes that there is at least a "barely colorable justification for the outcome reached," and by all indications a more than colorable one. *Michaels Realty Corp.*, 954 F.2d at 797. Accordingly, the Court confirms the award.

## CONCLUSION

The Court grants CFS's petition to confirm the arbitral award against Emco.

SO ORDERED.

                                                    Paul A. Engelmayer
                                                    United States District Judge

Dated: November 9, 2023
       New York, New York

---

*Union Fire Ins. Co. of Pittsburgh, PA v. Source One Staffing LLC*, No. 16 Civ. 6461 (JMF), 2017 WL 2198160, at *2 & n.1 (S.D.N.Y. May 17, 2017). Such "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991).